*552 The opinion of the Court was delivered by
Dargah, . Ch.
The property involved in the question submitted to this Court, was derived to the plaintiff, Mrs. Converse, from the estate of her first husband, Eobert Marion De Veaux. Proceedings were instituted in the Court of Equity, for the partition of this estate, of which this plaintiff, as widow, was entitled to one-third, and the remainder was divided among the other heirs-at-law of Eobert Marion De Yeaux, who were his children. During the progress of the cause, an order was made for the settlement upon the plaintiff of her share of the said estate. Proposals were made as to the terms of the settlement, which, having been reported by the commissioner, the report was confirmed. In pursuance of the terms of settlement prescribed by the decree of the Court, Mr. and Mrs. Converse, by a deed bearing date 27th March, 1849, conveyed all the share of Mrs. Converse in said estate, to John C. Singleton, for the sole and separate use of Mrs. Converse, during her life, and after her death for such persons as she, by any instrument in the nature of a testament, should appoint; and, in default of such appointment, to her right heirs — with the reservation of a power to Mrs. Converse, by any deed executed by her in the presence of two witnesses, to revoke the uses declared in the deed creating the trust, and to declare new uses, and to convey the property, or any part thereof, to any person or persons as she saw fit, in the same manner as if she was a feme sole : also to sell said property, or any part thereof, with the view of changing the investment: also at her discretion to remove the trustee, and substitute another in his place. To this estate there also belonged two negroes, Peter and Gabriel, conveyed by Eichard Singleton, to John 0. Singleton, by a deed bearing date 9th July, 1849, for the same uses, and subject to the same conditions, and agreements, as are expressed in the deed of 27th March, 1849.
Mrs. Converse afterwards exercised the powers reserved to *553 hex, and by a deed dated 13th September, 1850, she revoked the uses declared, as well in the marriage settlement deed of 27th March, 1849, as in the deed of Richard Singleton of the 9th July, 1849, and, by her deed of revocation, declared and appointed that the said John 0. Singleton, should hold the said property for the joint use of the said A. L. Converse and V. Marion Converse, during their joint lives; and if the said A. L. Converse should be the survivor, for his use during his life; and if the said V. M. Converse should be the survivor, for her use, &c. By a deed bearing date 5th January, 1852, she revoked the appointment of John C. Singleton as trustee, and appointed a substitute, E. M. Anderson, as trustee in his place.
On the 12th day of May, 1854, the plaintiff filed this bill, praying, inter alia, that her deed of revocation and appointment, dated 13th September, 1850, should be set aside, and, by a decree of this Court, declared null and inoperative, and she be restored to her original rights, as if such deed had never been executed.
The Chancellor, who heard the case on the circuit, refused to grant the plaintiff the relief which she sought. He refused to set aside this deed, and decreed accordingly. From this decree an appeal was taken to the Court of Appeals in Equity on various grounds; among which is one, that assumes, that the circuit decree is erroneous, because it did not set aside, and declare as null and void the aforesaid deed of revocation and appointment. This appeal having been heard by the Court of Appeals in Equity, and the said Court not being-unanimous in its opinion, as to the correctness of so much of the circuit decree as relates to the said deed of appointment, ordered, that so much of the circuit decree as was brought in question by the said ground of appeal, should be referred to the Court of Errors.
The case has accordingly been placed on the docket of this *554 Court. It bas bere been beard; and I, as tbe organ of tbe Court, am now to announce its judgment.
Tbe ground of appeal, wbicb bas been submitted to tbis Court, is in tbe following words: “ that tbe Chancellor ought “ to have decreed that tbe estate known as 1 Tbe Buins,’ and “the slaves and property appertaining thereto, should be settled “upon tbe complainant, upon tbe terms of tbe originalsettle“ment thereof, and that A. L. Converse should have been “ excluded from any use in tbe same.” Tbe estate referred to bere as ‘ Tbe Buins,’ was tbe estate conveyed in tbe original deed of settlement, (27th March, 1849,) tbe uses of wbicb were changed by tbe deed of revocation and appointment, (18th Sept., 1850.)
If tbis deed can be successfully impeached upon tbis ground; if there be any vice or defect whatever in it, wbicb, according to tbe principles wbicb prevail in tbis Court, demands its recision,-the plaintiff’s motion must be granted. Tbis appeal brings into issue a question of law,_and a question of fact, wbicb, in their turn, I will briefly consider. ■
That a married woman, having a separate estate, with a general power to dispose of tbe same as if she were a feme sole, may bestow it upon her husband, is so well established at tbis day, as not to admit of debate, or doubt.
Whether we refer to English authorities, or to tbe decisions of tbe Courts of tbe different States of tbis Union, including those of South Carolina, tbe result is tbe same; the principle is clearly settled, and nothing can be considered as settled, by judicial decisions, if tbis principle can be brought into question, or be shaken. On tbis point I should be content to adopt what Mr. Boper, in bis treatise on Husband and Wife, 2 vol. 217, bas given as tbe result of the English decisions, namely: “ that, in transactions between husband and wife, “ relative to tbe separate estate of tbe latter, she, prima facie, “ will be viewed in tbe light of a feme sole, and as such be *555 “ competent to dispose of it to him, or for bis use; subject to “tbe proof of fraud, or undue influence on bis part.”
It is equally well settled, (tbougb not by sucb a series of cases,) that where tbe wife, under a general power of disposition, bestows ber separate estate upon ber busband, tbougb tbe prescribed forms of conyeyance be punctiliously observed, tbe Court will regard tbe transaction witb jealousy, and look into it witb a rigid scrutiny, under an apprehension, that tbe gift to tbe busband may have been extorted by an abuse of tbe marital power and authority. And if it appear that tbe gift has been wrung from tbe wife by compulsion, or a wrongful exercise of authority, by duress, physical or moral, or by any undue means, or influence, tbe deed will be set aside, and tbe wife be restored to ber original rights. As to tbe correctness of these principles tbe Court is unanimous. Nor did I understand them to have been controverted in tbe argument. It is unnecessary to adduce authorities. Tbe books abound witb them. Many of tbe cases, English and American, have been cited, and commented upon by Chancellor Kent, in Braclish vs. Qibbs, 3 Johns. Cb. 523. Reference to them may also be bad in any of tbe recent elementary treatises upon tbe subject.
It is easy to say, that if tbe gift is obtained by compulsion, duress, or fraud, it is void; all deeds and contracts are void for those causes. But gifts from the wife to tbe busband may be set aside for acts or means not falling within these definitions ; in other words, sucb gifts to tbe busband may be set aside for causes, which would not call for tbe interposition of tbe Court in similar -transactions of tbe wife witb strangers-. This is on account of tbe suspicion, witb which tbe Court regards tbe dealings of tbe busband witb bis wife, for bis own benefit. What will constitute tbe undue means or influence which will invalidate tbe gift, cannot be defined witb precision. In a case not amounting to compulsion, or fraud, tbe illegiti *556 macy of tbe means or influence employed, must, I apprehend, from necessity, be left to tbe sound judgment of tbe Court.
It seems not to be essential, that tbe gift of tbe wife to tbe busband should spring from tbe spontaneous suggestions of her own mind. Tbe persuasions, and importunities of tbe busband, unaccompanied by commands, or threats, though aided by tbe suggestions and advice of other persons, are not illegitimate, nor sufficient to invalidate tbe gift. In a well considered case, where influences like these were brought to bear upon the wife, to induce her to bestow a portion of her separate estate upon her busband, who was without property, tbe Court refused to interfere, and to set aside tbe gift, on tbe application of tbe wife. Oruger vs. Oruger, 5 Barbour, 225. In tbe case cited, as in tbe case now under consideration, tbe gift was for half of tbe wife’s income. It was said by tbe presiding judge, in delivering tbe opinion of tbe Court: “it is certainly favorable to tbe instrument in question, that it contained a reasonable disposition of tbe income of Mrs. Cru-ger’s estate. It could not be considered an abuse of her power, to devote a portion of her income, what she could conveniently spare, to promote tbe welfare, and advance tbe interests of one, whom she had solemnly promised to love, honor and obey.”
I have now said all that I meant to say, or that I conceive it necessary to say, in regard to tbe principles of law properly applicable to tbe case. Our next inquiry will be in reference to tbe facts.
Tbe deed of marriage settlement of 27th March, 1849, clothed Mrs. Converse with an unlimited power of disposing of her separate estate secured by that deed. Tbe property mentioned in this instrument, (which is now tbe subject of controversy,) was conveyed to tbe trustee for tbe sole and separate use of Mrs. Converse, during her life, and after her death, to such persons as she, by any instrument in tbe nature of a testament, should appoint; and, in default of such appoint *557 ment, to ber right beirs — with a reservation of a power to Mrs. Converse, by any deed executed by her in the presence of two witnesses, to revoke' the uses declared in the said deed, and convey the said property, or any part thereof, to any person or persons, as she saw fit, in the same manner as if she was a feme sole. It is impossible for Mrs. Converse to have been invested with more ample powers. In the execution of a power of revocation and appointment, it is necessary that the forms prescribed by the instrument creating the power, should be strictly pursued. In this case the power was duly exercised as to form. By a deed bearing date the 13th September, 1850, signed and sealed by Mrs. Converse, in the presence of, and attested by two witnesses, in the exercise of the power reserved, she revoked the uses declared in the deed of marriage settlement, and declared and appointed, that the trustee should hold the said property for the joint use of herself and her said husband, during their lives, &e. There is no controversy as to the factum of the deed; nor is there any allegation, or pretence, that its execution was extorted by personal restraint, or fear, or under circumstances which would amount to actual duress. Its validity is brought in question on the ground, that the gift to the husband was wrung from the wife by undue means, and by an abuse of the marital authority and influence. The case as presented to the Court, is thus reduced to a question of fact, which must be dispassionately resolved by a diligent investigation and consideration of the facts that are stated in the brief.
In accordance with one of the principles above laid down, as governing the decision of the case, the Court has looked with jealousy and suspicion on this transaction, and has cautiously, and deliberately weighed all the circumstances, for the purpose of seeing if the gift was tainted with any of those characteristics, which would call upon the Court, according to its acknowledged principles, to vacate, and set it aside.
*558 It is but too apparent to tbe Court, tbat tbe defendant bas acted badly, and tbat bis conduct towards tbe plaintiff, in some of tbe stages of tbeir matrimonial life, was marked by unkindness, overbearing and cruelty. But these passages in tbeir married life, were long posterior .to tbe deed of appointment now sought to be set aside; at tbe date of which, and for several years subsequent, there does not appear to have been any serious disturbance of tbe domestic relations between the plaintiff and defendant, or of misconduct on bis part. If tbe deed was originally unaffected by circumstances tbat would vitiate and defeat it; if it was in its inception valid, I cannot perceive, upon what principle of law, or equity, it can be invalidated by circumstances ex post facto. A proper mode by which to test tbe validity of this deed, would be this. Suppose a suit bad been instituted, with tbe allegations and prayer of this bill to set it aside, immediately after its execution, or within two, or even three years afterwards, — what would have been tbe result ? It is manifest that the circumstances tbat then existed, would not have afforded tbe slightest ground to impeach its validity. If, by its execution in a lawful manner, tbe defendant bas acquired vested rights of property, those rights cannot be divested by bis subsequent illegal acts, though bis conduct towards her might have been atrocious, and bis trespasses against her aggravated. It is one of the highest triumphs of justice, and a proud victory achieved over human passion, and infirmity, when the worst of men, (without intending, by any means, to insinuate, that the defendant falls within that category,) can have his just and legal rights awarded to him by judicial tribunals, irrespective of bis character, conduct, or position. A party may be under the ban of public opinion. He may be justly obnoxious to the foulest imputations. But hate cannot strike him in tbe balls of justice. Popular passions and prejudices, and external influences cannot reach or affect this tribunal, whose *559 ministers are pledged, by their very official investiture, to “do justice to all sorts of people.”
But it will be necessary for me to look into the evidence upon this question of fact. And here I will observe, that all the evidence that bears upon the subject is contained in the bill and answer; unless, indeed, we suffer the defendant’s misconduct in 1854, to show that the deed of appointment was extorted by similar misconduct in September, 1850. It should be remembered also, that the disturbances in 1854, arose from causes entirely different from contests about property. The questions- about the property, at the latter date, ha'd all been amicably adjusted, and the parties seemingly satisfied on that subject. The subsequent wrangling between the parties, and the consequent disruption of their ties, arose, so far as I can perceive, from a want of congeniality of temper and disposition.
The charge, that the deed of appointment was procured from the plaintiff by undue influence, or an abuse of the marital power, is but faintly presented in the bill. This is the whole of what the plaintiff says on this subject. She says —“the defendant became so irritable and unamiable at the terms of the settlement, that your oratrix was induced, at his earnest solicitation, to revoke the uses of the deeds above mentioned, and on the 18th day of September, 1850, without the knowledge of her father, or her trustee, in order to preserve peace and harmony in her family, she executed the deed, whereof a copy is herewith filed, marked Exhibit C., thereby revoking the uses secured to her by the former deeds, and conveyed to the same trustee the said property upon this substituted trust, to wit: that the trustee would permit your oratrix and the Rev. A. L. Converse to have a joint use of the income and profits during their joint lives, and that the said A. L. Converse, if survivor, should enjoy the whole income for life, and that if your oratrix was survivor, it should be enjoyed by her. By this deed your oratrix reserves all the power *560 secured to ber by tbe deed of March, 1849, except so far as tbis deed changes tbe use of tbe property during tbe lives of tbe said A. L. Converse, and your oratrix. Your oratrix further shows unto your Honors, that various acts, on tbe part of tbe said defendant, bad conspired to mar ber domestic happiness; nevertheless, to pacify him and secure peace at home, she consented to remove ber brother, John C. Singleton, from tbe trusteeship, to which be was, by no means, unwilling, as be was greatly dissatisfied with tbe change in tbe terms of tbe trust. Accordingly, on tbe 5th day of January, 1852, she executed a deed, whereof a copy is herewith filed, marked Exhibit D., by which she conveyed all tbe property mentioned in Exhibits A, B, and 0, to E. McKenzie Anderson, Esq., a worthy gentleman of Sumter District, named by the defendant for that purpose, but who was in nowise connected with, or related to herself, or her family. By tbis deed of January, 1852, your oratrix is made to recite that by the deed of 13th September, 1850, she had renounced the power to change the uses of the property during the life of the said A. L. Converse. But your oratrix expressly declares that the deed of January, 1852, was brought to her by the said defendant ready prepared, and looking to the main object he had in view, to wit — the change of the trustee, your oratrix signed, without having reference to the said recital, the correctness of which she does not admit.” She prays, “ that the said deeds may be so far modified, as to revest in her, or in the trustee for her, her rights in the property which she enjoyed, in the same manner as prior to the said deed.”
The foregoing extracts present the whole of the plaintiff’s case as it is set forth in the bill. The most of what is contained in these extracts, relates to the instrument by which the trustee was changed, rather than to the deed of appointment, which was the gravamen of the bill as to this branch of the case.
The answer of the defendant to this part of the bill, is as *561 follows: “ This defendant submits, tbat if be did become un-amiable at ‘ The Ruins,’ it was in consequence of tbe entire command, and assumption of authority by the complainant in relation to the property there; for, supposing that by the deed all his rights as husband were subordinate to her claim under the deed, he at last informed her that rather than be goaded by a constant reference to his position in regard to the property, and to be perpetually harassed with a constant repetition from her, that this was her land, these her negroes, and her horses and cattle, he would remove to the Parsonage, where at least he could be master of his own house. That when he married her he was residing at the Parsonage, a comfortable and commodious dwelling, and it was upon her invitation he removed to 1 The Ruins ’; that these difficulties in reference to her individual authority, were compromised and arranged, and thereupon she agreed to execute the power reserved to her in the said deed of settlement, and did so by executing the deed of 13th September, 1850. The said deed was executed at the house of Dr. ~W. W. Anderson, with whose family she was very intimate, and witnessed by the doctor and his lady, she remarking at the time to Mrs. Anderson, as the defendant believes, her cheerful satisfaction in thus securing to her husband ‘The Ruins’ and the negroes, as she thought it was due to him.”
This charge in the bill, and this portion of the defendant’s answer, constitute literally the whole evidence on the grave and important question, whether the deed of appointment was procured from the plaintiff by undue influence. She says, that the defendant was so much dissatisfied with the terms of the settlement, that he became irritable and unamia-ble, while they resided at “ The Ruins,” and she, to preserve peace and harmony in the family, executed her power of appointment in his favor. His admissions, in reply, are stated hypothetically: If he became unamiable at “ The Ruins,” it was in consequence of her constant and arrogant *562 assertion of exclusive dominion over tbe property, in a manner that was offensive to him. If his admissions are to be taken against him, he ought to have credit for the accompanying explanations. In admitting his moroseness, he assigns causes, which certainly palliate, if they do not excuse his ebullitions of temper. He goes on to say, that these difficulties were compromised, and she agreed to execute the power of appointment. He concludes by stating, that the deed was executed at the house of Dr. Anderson, and witnessed by himself and his lady, whose attestation appears on the face of the paper. Here was certainly an opportunity of expressing her dissatisfaction, if any existed. On the contrary, the defendant, in this part of his answer, represents her as expressing to Mrs. Anderson “her cheerful satisfaction in thus securing to her husband ‘ The Ruins,’ and the negroes, as she thought it was due to him.” If this part of the answer was false, it was easy to have proved it so, as Mrs. Anderson still lives in the neighborhood, and might easily have been brought forward as a witness. Are these admissions sufficient to invalidate the deed ? On the contrary, if they are to be believed, they would lead to a directly opposite conclusion. I doubt if the defendant, or his counsel, in drafting the answer, supposed that they were called upon to answer such a charge, or that the statement could be distorted into a concession, that the deed of 13th September, 1850, was procured by undue influence. There is nothing in the circumstances, attending these unhappy domestic dissensions, so far as they have been developed to the view of the Court, which would go to show, that the plaintiff’s character and disposition were of that soft and yielding material, over which coercion of any kind, could have been successfully exerted. On the contrary, they reveal, on her part, an uncommon strength and tenacity of will, and an indomitable courage, and firmness in resisting requirements, that were not agreeable to her.
*563 It is said to present an infavorable view of tbe defendant’s case, because tbe wife bas stripped berself of ber property, wbicb had been secured to berself, to bestow it on ber husband. This is certainly an exaggerated representation. She did not strip berself of her property. She was possessed of an easy competency in possession, with a large estate in expectancy, soon after realized. Her children bad an independent property derived from their father’s estate, also large expectancies since secured to them by way of remainder after their mother’s life estate, under tbe will of their grandfather. Her husband was without any estate. He was the Pastor of a refined and respectable congregation of the Episcopal Church. It was natural that he should desire to possess some independent resources, in the 'event of his being the survivor. It was natural that she should be willing to gratify his reasonable desires in this respect. It was not unreasonable, that she should have provided for his wants, as she did by the deed of 13th September, 1850, which was for the joint use with herself of the estate called “ The Ruins,” for their joint lives, remainder to the survivor for life, with a power of appointing by testament, and in default of such appointment to her right 'heirs. I think, that the provision, which the plaintiff made for her husband, was not unreasonable, without reference to her expectancies.
The terms in this deed resemble nearly those that a Court of Equity ordinarily prescribes in decreeing a settlement. As the Court never orders a settlement unless the wife be under age, or asks for it, it will sanction any terms, which may be agreed upon by the husband and wife. The most usual terms of a settlement in Equity, direct the estate to be held for the joint use of the husband and wife for their joint lives, remainder to the survivor for life, remainder to the issue of the marriage. The husband has rights in his wife’s equitable estates, that are recognized and respected. Where the Court is called on to adjudicate, it is *564 referred to tbe Commissioner to report terms. Most usually tbe parties agree, and tbe report is confirmed without exceptions. In cases where tbe parties do not agree, tbe Court is governed by circumstances. If tbe husband has already received largely of tbe wife’s estate, that fact is considered, and great weight is given to it. If tbe husband has abandoned bis wife, or otherwise maltreated her; if be is a prodigal spendthrift, or hopeless insolvent, or otherwise worthless and profligate, the Court will settle the whole of the wife’s estate to her sole and separate use. But, in cases unaffected by peculiar circumstances, terms nearly resembling those of this contested deed, are prescribed by the decree. In some respects, the husband for the most part obtains better terms than in this case. Eor a provision for the issue of the marriage, is scarcely ever omitted in a settlement in Equity, which provision was not introduced either in the original settlement of the plaintiff’s estate, or in the deed of appointment. I allude to the practice of the Court in this particular, for the purpose of showing, that this is not an unreasonable provision for the husband, nor an unjust concession on the part of the wife; similar, and in some respects better terms, being conceded to the husband in the daily practice of the Court of Equity.
But it must be remembered, that the deed of appointment was executed on the 18th September, 1850, and the plaintiff did not impeach it for this, or any other cause, until the 12th May, 1854, when she filed this bill. In the meantime she lived in tolerably harmonious relations with her husband. In the interval, her expectancy under her father’s will fell in. It was a large estate, consisting of a valuable plantation, known in these proceedings by the name of “ True Blue,” with two hundred negroes, provisions, stock of every kind, &c. In the summer of 1853, a bill was before the Court of Equity, for Bichland District, filed by the executor of the estate of Richard Singleton, for an account and settlement of *565 that estate. He also prayed that Mrs. Converse’s share should be settled upon her. The question as to the terms of the settlement was before the Court. It was referred to the Commissioner to report as to suitable terms. While this reference was pending, Mr. and Mrs. Converse amicably-agreed upon terms, which were reported by the Commissioner, and sanctioned by the decree of the Court. Doubtless this agreement as to the terms, was modified by the fact of the existing provision in the defendant’s favor, by virtue of the deed now sought to be set aside. He was probably induced to be contented with less, and by the rules of the Court was entitled to ask less, in consequence of the provision already made for him out of his wife’s estate.
But surely, if the plaintiff had suffered any grievances like those complained of in this bill; — if the defendant had by compulsion, by vile artifices of fraud, or undue means of any kind, wrung from her the provision which she made for him in the deed of 13th September, 1850, then was the favorable occasion for her to have proclaimed it. When he was claiming a further provision out of her newly acquired property, it would have been natural and consistent for her to have resisted, on the ground of his improper.conduct in obtaining the first provision. But she never opened her mouth as to these grievances, which, three years afterwards, are so vehemently insisted on. She acquiesced; she more than acquiesced; she amicably agreed, that he should have one-fourth of the nett income of the “ True Blue ” estate, an interest much larger than half of the income of “The Bums.” But not only does she fail to bring forward these charges on that propitious occasion, but she declares, in her answer to the bill of the executor, praying, inter alia, that her “ True Blue” estate be settled upon her, that she has entire confidence in the character of her husband, and assented to the settlement as it stands. Making every allowance for the delicacy and pride, which refrain from lifting the veil which concealed from *566 public view disreputable family transactions, it is difficult under tbe circumstances of tbis case, to believe, that the deed of 13th September, 1850, or that of the 5th of January, 1852, were extorted from her by coercion, undue influence, or by any of those means that would render it proper for the Court to set it aside.
In deference to the zeal with which this case has been argued, and the deep interest which the parties feel in the issue, I have extended these observations to a length not demanded by the questions that have been submitted to the Court, nor the difficulties attending their solution.
It is ordered and decreed, that so much of the appeal in this case, as comes up from the Court of Appeals in Equity to this Court, be dismised, and the Circuit decree in that respect be affirmed.
JOHNSTON and Wardlaw, CO., and Wardlaw, Withers, G-lover and Munro, JJ., concurred.